*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



# MEMORANDUM OPINION

No. 04-12-00150-CV

**IN THE INTEREST OF H.S.V.**, C.M.V. and T.M.V., Children

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-PA-01017
Honorable Charles E. Montemayor, Judge Presiding[1]

Opinion by:     Marialyn Barnard, Justice

Sitting:        Catherine Stone, Chief Justice
                Sandee Bryan Marion, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  August 22, 2012

AFFIRMED

On the court's own motion, we withdraw the opinion and judgment issued July 11, 2012, and substitute this opinion and judgment. After a bench trial, the trial court rendered a judgment terminating appellant W.M.V.'s parental rights to her three children, H.S.V., C.M.V. and T.M.V. On appeal, appellant contends the evidence is legally or factually insufficient to support the trial court's findings that: (1) she failed to comply with a court order that established the actions necessary for her to obtain the return of her children; and (2) the children were removed from appellant for reasons of abuse or neglect. We affirm the trial court's judgment.

---

[1] The Honorable Richard Price is the presiding judge of the 285th Judicial District Court in Bexar County, Texas. The termination order was signed by Associate Judge Charles E. Montemayor.

**BACKGROUND**

The appellate record shows appellant has an extended history with the Texas Department of Family and Protective Services ("the Department"). Appellant and her boyfriend, Robert Gonzales, have been actively under investigation or receiving services from the Department since 2004. The referrals to the Department included claims of negligent supervision and physical abuse and neglect.

In 2009, a referral was made to the Department alleging physical abuse of C.M.V. During the investigation, C.M.V. reported to the Department caseworker that she has been abused by Gonzales. She also alleged Gonzales abused appellant. Appellant denied the abuse, accusing C.M.V. of lying. The Department formally opened a case and devised a safety plan. As caseworker Natalie Harrison described in an affidavit attached to the petition ultimately filed by the Department, the safety plan required, among other things, that appellant not leave the children alone with Gonzales. In fact, Harrison stated in her affidavit that Gonzales "had been safety planned out of the home" due to history of abuse and domestic violence. Despite this requirement, Harrison discovered Gonzales alone with the children in April of 2010. Gonzales claimed appellant was shopping and would return shortly. The Department ultimately discovered appellant had been absent from the home for an extended period of time, spending a week with a man she met on the Internet. The children were removed from the home.

The next month, the Department filed its Original Petition for Protection of Children, for Conservatorship, and for Termination, stating numerous grounds for termination of appellant's parental rights. Thereafter, the Department prepared a family service plan for appellant. The plan stated the permanency goal was to reunite appellant and her children. During the pendency of the case, the Department filed three permanency plans and progress reports with the trial

court. Ultimately, the Department determined the goal of reunification was unattainable. Accordingly, the matter proceeded to a bench trial in October 2011. The matter was tried on several dates from October to January. After the trial, the trial court determined appellant's parental rights should be terminated, finding by clear and convincing evidence that: (1) termination was in the best interest of the children, and (2) appellant "failed to comply with the provisions of a court order that specifically established the actions necessary for [her] to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent under Chapter 262 for abuse or neglect of the children[.]" Appellant was appointed appellate counsel who timely perfected this appeal.

## ANALYSIS

On appeal, appellant contends the evidence is legally and factually insufficient to support the trial court's findings relating to termination. Specifically, she contends there is insufficient evidence to establish: (1) the children were removed for abuse or neglect, and (2) to establish she failed to comply with the provisions of a court order. The Department counters by arguing the evidence is both legally and factually sufficient to support both findings.

### *Standard of Review*

A parent's rights to a child may be terminated upon proof by clear and convincing evidence that the parent: (1) has committed an act prohibited by section 161.001(1) of the Texas Family Code ("the Code"), and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. §§ 161.001(1) (West Supp. 2011); *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (holding proceedings to terminate parental rights under Code require proof by clear and

convincing evidence); *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980) (adopting clear and convincing standard of proof for sufficiency review in termination of parental rights cases). Clear and convincing evidence is proof that will produce a firm belief or conviction in the mind of the fact finder that the allegations sought to be established are true. TEX. FAM. CODE ANN. § 101.007 (West 2008).

As the supreme court has noted, "[t]he distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but there is a distinction in how the evidence is reviewed." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). In a legal sufficiency review, we must look at all of the evidence in the light most favorable to the findings at issue to determine whether a reasonable factfinder could have formed a firm belief or conviction that the findings were true. *Id.* We must assume the factfinder resolved disputed facts in favor of its findings if a reasonable factfinder could do so. *Id.* We must also disregard all evidence that a reasonable factfinder could have disbelieved or found to be implausible. *Id.* However, we need not disregard all evidence that does not support the findings at issue because disregarding undisputed facts that do not support the finding could skew the analysis. *Id.* If we determine that no reasonable trier of fact could form a firm belief or conviction that the matter that must be proven is true, we must hold the evidence to be legally insufficient. *Id.* Such a finding requires rendition of judgment in favor of the parent. *Id.*

When we review whether the evidence is factually sufficient to support challenged findings in a termination case, we must consider, in light of the entire record, the evidence a trier of fact could reasonably have found to be clear and convincing and determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department's] allegations." *Id.* (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)).

In reviewing termination findings for factual sufficiency, we must give due deference to the trier of fact's findings and must not supplant its judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266. A finding of factual insufficiency requires we remand to the trial court for further proceedings. *S.H.R. v. Dep't of Family & Protective Servs.*, No. 01-10-00999-CV, 2012 WL 1441398, at *18 (Tex. App.—Houston [1st Dist.] Apr. 20, 2012, no pet.).

### *Application*

Appellant's rights were terminated under section 161.001(O) of the Texas Family Code. That section permits a court to order termination of the parent child relationship if the court finds a parent has:

> [F]ailed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262[2] for the abuse or neglect of the child.

TEX. FAM. CODE ANN. § 161.001(1)(O) (West Supp. 2011).

### *A. Removal for Abuse or Neglect*

Appellant first contends the evidence is insufficient to establish the children were removed for "abuse or neglect." Appellant argues the only evidence before the trial court showed the children were removed because appellant violated her safety plan, which required that she not leave the children with Gonzales. Appellant asserts, without citing any authority,

---

[2] Chapter 262 of the Texas Family Code governs, among other things, the standards, processes, and procedures relevant to removal of children by the Department with and without court orders.

that "[a] safety plan violation does not satisfy the second prong of Tex. Fam. Code Ann. Sec. 161.001(1)(O)." Appellant also contends the evidence is insufficient because Natalie Harrison, the caseworker who swore out the affidavit resulting in the initial removal and who testified at trial regarding the removal of the children, was not credible. Appellant points out: (1) Harrison admitted to making certain misstatements at trial, specifically that the children were previously returned by the court over the Department's objection when the Department actually agreed to the return; (2) Harrison testified H.S.V. was not bonded with her mother and H.S.V. was afraid of her mother and wanted to live with a previous foster mother; however, the therapist testified H.S.V. expressed a strong attachment to her mother; and (3) Harrison had not seen the children for several months yet still felt comfortable in testifying that termination was in their best interest. Appellant contends this evidence had to make the trial court "highly suspicious as to the true reason the children were removed."

Several appellate courts have held that termination under section 161.001(1)(O) does require evidence that the parent abused or neglected the child. *See, e.g., In re A.A.A.*, 265 S.W.3d 507, 515 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *In re S.A.P.*, 169 S.W.3d 685, 705-06 (Tex. App.—Waco 2005, no pet.); *In re M.B.*, No. 07-04-0334-CV, 2004 WL 2867544, at *2 (Tex. App.—Amarillo Dec. 14, 2004, no pet.) (mem. op.). However, neither section 161.001(1)(O) nor Chapter 262 specifically defines "abuse" or "neglect," and case law holds the existence or absence of abuse or neglect must be determined on a case-by-case basis. *See In re A.A.A.*, 265 S.W.3d at 515 (reviewing numerous cases in which courts found evidence sufficient or insufficient to support a finding that child was removed for abuse or neglect under Chapter 262).

Considering the specific facts of this case, we hold the evidence is legally and factually sufficient to support the trial court's determination that the children were removed from appellant for neglect. Harrison, the Department caseworker for appellant's family at the time of the removal, testified she conducted a home visit on April 29, 2010. When she arrived, she found Gonzales home with his biological son; appellant was not at the house. Gonzales told Harrison appellant "had gone to the store and would be back momentarily." Harrison testified she waited until H.S.V. and C.M.V. came home from school and spoke to them. According to Harrison, the children mentioned their mother was gone, but did not say how long she had been gone.

Harrison admitted she did not believe the children were unsafe or had immediate issues, given that appellant was going to be gone for a short time. However, she was concerned because they were alone with Gonzales in violation of the safety plan, which prohibited him from being alone with the children or in the same house. The safety plan was implemented, according to Harrison's testimony, because C.M.V. had reported physical abuse by Gonzales.

Harrison stated appellant did not return during her visit. Harrison testified she subsequently learned appellant had been "gone for an extended period of time" and the family could not contact her. The evidence established appellant left her children, despite the safety plan and the allegations of abuse against Gonzales, to spend time with a man she met on the Internet. Appellant did not care for her children for an entire week, leaving them with a man accused of abusing at least one of them. It was only upon learning of appellant's extended absence from her children that the Department sought to remove the children. There is nothing in the record to contradict the rendition of events leading up to the removal; the evidence is

undisputed. And, in fact, appellant admitting during cross-examination that she violated the safety plan by leaving the children alone with Gonzales.

As to appellant's claim that her actions were nothing more than a violation of the safety plan, and therefore insufficient to establish abuse or neglect, we disagree. The undisputed evidence establishes appellant left her children for an entire week in the care of a man accused of abusing at least one of them. This is, in our opinion, evidence of neglect. That the neglect committed by appellant that resulted in the removal of the children under Chapter 262 might also constitute a violation of the safety plan does not render the act any less neglectful for purposes of section 161.001(1)(O). It is self-evident that a violation of a safety plan could, in fact, constitute abuse or neglect.

Appellant also argued Harrison's testimony was less than credible. However, this court cannot weigh credibility issues that depend on the appearance and demeanor of the witness, and even when credibility issues appear in the record, we must defer to the trier of fact's determinations as long as they are not unreasonable. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). The trial court, the factfinder in this case, could have found any misstatements or contradictions in Harrison's testimony to be minor errors rather than proof the Department removed the children from appellant for reasons other than neglect. We do not find, given Harrison's overall testimony, as well as the rest of the evidence in the record, that the trial court's decision to believe Harrison's testimony was unreasonable.

After considering all of the evidence, we hold the trial court could have reasonably formed a firm belief or conviction that the children were removed because of appellant's neglect. *See In re J.F.C.*, 96 S.W.3d at 266. Accordingly, we overrule appellant's contention.

### B.  Failure to Comply with Court Order

Appellant also contends there is insufficient evidence appellant failed to comply with the provisions of a court order that established the actions necessary for her to obtain the return of her children.  More specifically, appellant contends there is no evidence establishing what appellant was required to do to be reunited with her children, and no evidence establishing which provisions of a court order she failed to comply with.  Appellant contends the only evidence is the testimony of appellant that she completed all requirements of the service plan.

First, there is sufficient evidence of what actions appellant was required to take to obtain the return of her children.  Appellant points only to testimony in the record, but ignores the fact that the family service plan, and a court order adopting the family service plan and ordering appellant to comply with it, was filed in the papers of the court and is in the clerk's record. These documents specifically set forth what appellant was ordered to do to get her children back. The trial court's failure to affirmatively state on the record that it was taking judicial notice of these documents is not dispositive.  We have held the trial court may be presumed to have taken judicial notice of the records in the court's file without any request being made and without an announcement that it has done so.  *In re A.X.A.*, 2009 WL 5150068, at *4 n. 3.  A "trial court is presumed to judicially know what has previously taken place in the case tried before it, and the parties are not required to prove facts that a trial court judicially knows."  *In re J.J.C.*, 302 S.W.3d 436, 446 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (internal quotations and citation omitted).  Accordingly, the trial court could consider the family service plan, and the order adopting same, as evidence of what appellant was required to do to get her children back.

Appellant also contends there is insufficient evidence that appellant failed to comply with any such court order; rather, the only evidence was appellant's testimony that she "finished everything on her family service plan." We disagree.

The family service plan, which the court ordered appellant to comply with, required appellant to, among other things: (1) participate in individual therapy and attend all appointments on time and as scheduled; (2) participate in a psychological evaluation and follow any recommendations made as a result of the evaluation; (3) maintain stable housing and provide the Department with three utility bills in her name as proof; (4) make child support payments and make payment arrangements to remain current on child support; (5) demonstrate an ability to put the children's needs ahead of her own; (6) understand and support her children's efforts to deal with issues relating to their mistreatment; (7) understand the children and see them in a more positive way; and (8) demonstrate an ability to protect the children from harm. The Department presented evidence that appellant failed to comply with each of these requirements.

Pam Hanson, appellant's individual counselor for the six months preceding trial, testified she had difficulty with appellant keeping appointments. Hanson stated appellant's residence had a tall fence around it and a locked gate. Hanson would call appellant and advise her she was coming over for a scheduled appointment, which was set up around appellant's schedule. However, when Hanson arrived and called appellant to come and unlock the gate, appellant "wouldn't pick up." According to Hanson, appellant would call her several hours or days later to apologize, giving excuses like she was "[i]n the bathroom, didn't hear [the] phone, didn't know [Hanson] was out there." Hanson said appellant missed at least three appointments, resulting in the sessions being terminated "for noncompliance." When asked what the missed appointments indicated as far as appellant's progress, Hanson stated, "It's not good." The sessions were

ultimately resumed when Hanson was asked to continue them by a new Department caseworker, but the best Hanson could state about attendance after resumption was that it "got better." During her testimony, when asked if she was still in therapy, appellant said, "I – I don't know," but admitted she had not seen a therapist recently.

Hanson also testified about appellant's inability to maintain a stable home. Hanson stated that until recently, appellant was living with Gonzales's mother, a situation Hanson considered unstable and detrimental to appellant. Rosindo Rodriguez, a Department caseworker who worked with the family in the months leading up to the trial, also testified about appellant's inability to obtain a stable home. According to Rodriguez, appellant moved often. At one point, she was living with Gonzales's mother, but was evicted. She then moved in with a couple, but ultimately moved out. Rodriguez testified that as of the date of trial, he had no idea where appellant was living.

The record shows appellant had her own residence for only two of the eighteen months the Department was involved. However, when pressed, appellant could not say exactly where the home was located, stating only that it was approximately nine miles from San Antonio, and she had no idea of the applicable school district. Appellant admitted that for most of the time the Department was involved with her family, she continued to live with Gonzales–despite the safety plan and her admission that he beat her at least twice in front of C.M.V. One of those beatings occurred while she was pregnant with T.M.V. Appellant testified she was "like a prisoner," but admitted she failed to seek help even while taking domestic violence classes. Appellant also admitted that when she finally moved away from Gonzales, she moved in with his mother, who she claimed "treated me the same way he did."

Rodriguez also testified about appellant's psychological testing and the failure of appellant to follow through with recommendations made as a result of the testing. Rodriguez stated appellant was diagnosed with "bipolar 2 disorder, personality disorder and NOS narcissistic features." However, appellant failed to follow up on the recommendations made after testing and diagnosis. She was referred to the Center for Healthcare Services, but made no effort to take advantage of the referral. In fact, according to Rodriguez, appellant has completely failed to demonstrate any insight into her mental instability. Rodriguez testified that when appellant was presented with the results of her psychological examination, she denied there was anything wrong with her. Appellant testified she was taking Prozac for stress and "mood swings." She apparently obtained the prescription from her personal physician after she advised him of her diagnoses and told him she was under a lot of stress.

Appellant was ordered to pay $250.00 per month in child support. Appellant admitted she did not pay any of the court-ordered child support even though she has had a full time job for the past nine or ten months. Appellant claimed she tried to pay, blaming her failure on the child support office, claiming she was unable to pay online and she was never sent the proper forms to pay. Appellant admitted she has no documentation to prove she tried to pay.

As to the court-ordered service plan requirements relating specifically to the care of her children, the Department presented significant evidence in this regard, and appellant's own testimony demonstrated her lack of understanding and ability to deal with her children's issues. Appellant was required to demonstrate an ability to put the children's needs ahead of her own, understand and support her children's efforts to deal with issues relating to their mistreatment, understand the children and see them in a more positive way, and demonstrate an ability to protect the children from harm. The most significant evidence as to appellant's failure as to

these requirements was her refusal to admit causing any physical harm to her children. According to caseworker Rodriguez, appellant continually claimed the children were lying about allegations of abuse. She denied dragging one of the children across the floor by her hair as the child claimed. Appellant also denied causing that same child's black eyes, claiming the black eyes were a result of the child's asthma, allergies, and that she is "half white and half black." Appellant also denied a claim by one of the children that appellant cut Gonzales with a pair of scissors. Appellant asserted the child was confused and Gonzales actually cut himself by stepping on the scissors.

Rodriguez testified he explained the children's issue to appellant, including one child's diagnosis of ADHD and behavior problems, but appellant often denies the existence of such issues, claiming the children did not have these problems while in her care. This is part of a pattern of denial by appellant to the existence of her children's needs. Appellant's inability to admit to the claims of abuse by the children, as well as her continued refusal to take any responsibility, at least until right before trial, is evidence of her inability to assist the children in dealing with their mistreatment and to protect them from harm.

The only testimony to contradict that described above was appellant's conclusory claims that she "pretty much did everything on my plan" and "finished everything, to my knowledge." The evidence refutes appellant's claims, and in fact her testimony establishes there were portions of the court-ordered service plan with which she never complied.

After considering the evidence set forth above, as well as the rest of the evidence in the record, we hold the trial court could have reasonably formed a firm belief or conviction that the appellant failed to comply with the provisions of a court order that specifically established the

actions necessary for her to obtain the return of her children.  *See In re J.F.C.*, 96 S.W.3d at 266.

Accordingly, we overrule appellant's sufficiency contention in this regard.

## CONCLUSION

Based upon our analysis of the evidence in light of the appropriate standard of review, we hold there is sufficient evidence to support the trial court's findings leading to the termination of appellant's parental rights.  Accordingly, we affirm the trial court's judgment.

Marialyn Barnard, Justice